THRASHER *v.* HUMPHREYS ET AL.

[70 South. 900.]

WILLS. *Constructions. Interest devised. Money on hand.*

When a testator after making specific bequest, devised all the residue of his property to his wife and provided that in case he should have more than three thousand dollars in money on hand

at the time of his death two bequests of one thousand dollars each should be paid, otherwise all money on hand should pass to his wife, a demand note to which was attached an agreement that it should not be paid until the end of the season, was not money on hand and where the testator in such case did not have on deposit or in his possession more than three thousand dollars at the time of his death, the conditional bequest will fail and his wife will take all.

APPEAL from the chancery court of Claiborne county. HON. R. W. CUTRER, Chancellor.

Petitions by Mrs. Martha J. Thrasher, executrix, against Mrs. Bettie B. Humphreys and another to construe a will. From a judgment for defendant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

Mr. Cason, as we have shown above, has set forth very fully the understanding with Judge Thrasher about his five thousand dollar dividend money, and he has shown that it was Judge Thrasher's understanding that the company was to reserve that money until the close of the season, and pay six per cent. interest thereon. Now, the appellees' cross-examination of witnesses in the court below rather indicates that counsel was stressing somewhat a matter of legal obligation. But the legal obligation of this situation has nothing to do with the real question. The real question is, what was Judge Thrasher's intention in the use of the expression which he did use? Even if it were true that the terms of the letter by which the note was transmitted to him would constitute an effort to vary the obligation of a written instrument which ran, "on demand," yet, nevertheless, that is a matter of no moment. The question is what Judge Thrasher understood, and what Judge Thrasher intended to do; and there is no evidence in this case whatever that he intended otherwise or ever attempted to do, otherwise, than to stand by and carry out exactly

the agreement which he made with Mr. Cason.   He would have a right in July to call for his money.   He did not.   He let the company keep it on as an interest-bearing note, and that note was on hand when his will was written, and when he died.   The interest was running, and interest does not run on money in hand. Looking to these facts, we submit that the decree of the chancellor below was erroneous, and should be reversed.

In support of our views, we submit the following authorities: *Carter* v. *Cox,* 44 Miss. 155; *Beck* v. *McGillis* (N. Y.), 9 Barb. 35, 60; *In re Price Will,* 169 Pa. 189; *In re Levy's estate,* 161 Pa. 189; *Mann* v. *Mann,* 14 Johns. 1; *Hancock* v. *Lyon,* 67 N. H. 216; *Smith* v. *Burch,* 2 Hun (N. Y.), 331; *Byron* v. *Landreath* (L. R.) 16 Eq. 475; *Collins* v. *Collins* (L. R.), 16 Eq. 455; *Dabney* v. *Cottrell,* 9 Grat. (Va.), 572; *Dillard* v. *Dillard,* 97 Va. 434.

*E. S. & J. T. Drake,* for appellant.

The one question before the court is whether the testator intended by the phrase "money on hand" to pass money on hand and in bank or whether he intended it to mean a promissory note, in his wife's possession, and designated by him for her use, as well.

The first question for investigtaion is as to the nature of the note.   It is, first of all, payable to "order," not to bearer.   It bears interest from date; it is not a deferred divdiend though called that in the letter accompanying it, but a loan; the dividend had been declared, and was due and payable, but the secretary, and manager anticipating tight money persuaded the stockholders to let the corporation "use" this money, for the coming season.   Lastly it is not a demand note, but a note due at the close of the season, about March 1, 1914, or a little later.   The note on its face is demand, but the letter accompanying it, qualifies this feature expressly and stipulates that it was not to be collectible until the

THRASHER *v.* HUMPHREYS. [Sup. Ct.

Brief for Appellees. [110 Miss.

close of the season. The letter and note form the whole contract and are to be construed together; see; 1 Green- leaf on Evidence, page 380; *Doe* v. *Bernard,* 7 S. & M. 322; *Millsaps* v. *Bank,* 71 Miss. 361.

So far as we have been able to ascertain, there is no authority holding that a note payable to order, even on demand, is even passed by the phrase "money on hand" but we are calling the court's attention to the above as it makes it even more clear that the testator could no thave intended to pass this note, knowing as he did, that it was not due for months, and having, fur- ther, set it aside for another purpose.

We have gone over the authorities as fully as our facilities permit, and find many cases where the phrase "money on hand;" "cash;" "money by me," and sim- ilar expressions are used; none of them hold, so far as we can find, that a note payable to order passes by any such phrase, though the word "money" without the qualifying words "on hand" has been most liberally construed where the context requires such construction.

Out of the large number of authorities bearing upon the question, and supporting our view, we cite the court to but three, viz.: Roper on Legacies, sec. 282; *Levy's Estate,* 28 Atl. 1068; *Hancock* v. *Lyon,* 26 Atl. 638.

*J. McMartin* and *R. B. Anderson,* for appellees.

The word money in its strict sense, means cash on hand or on deposit. The "word, though, is notoriously used in a much wider, more indefinite, and elastic" sense, and it may have any meaning which the. testa- mentary intent, as manifested by the will, read in the "light of proper evidence imparts to it, such as per- sonal property" in general, money due, reversionary interests in personalty, ground rents, bonds and notes, unsatisfied judgments, and even the "entire personal & real property of the testator." *Shelby* v. *Shelby* (Ky.), 8 Dana, 60; *Matter of Hendrickson,* 140 N. Y. App.

Div. —; *Apple* v. *Allen,* 56 N. C. 120; Dickson's Estate
& Pa. Dist. 699; Copia's Estate, 5 Hila. (Pa.) 214;
*Decker* v. *Decker,* 121 Ill. 341; *Jenkins* v. *Fowler,* 63
N. H. 244; *Sweet* v. *Burnett,* 136 N. Y. 204; Jacob's
Estate, 9 Pa. Co. Ct. 40; Above Affirmed, 140 Pa. St.
268.

Mrs. Jacobs, at the time of her death, was seized to
nearly as much real estate as personal. After giving
several pecuniary legacies, and one or more specific
legacies, she disposed of her residuary estate as follows:
"The remainder and residue of my money I give and
bequeath to the Hospital for the protestant church in
Philadelphia." "There is no mention of real estate in
the will, which may be accounted for by the fact, before
stated, that when she executed it she owned none, nor
did she for some years thereafter."

"There are two funds for distribution—one arising
from conversion of the personal property, and the other
from the sale of the real estate. The latter was claimed
for the heirs at law, upon the ground that it did not
pass by the will and that as to such real estate the tes-
tatrix died intestate. It is further to be observed that
at the time the will was made she had sufficient per-
sonal estate to pay all the legacies, but that by reason
of her purchase of the real estate her personal estate
was so much diminished that it will only pay about fifty
per cent of such legacies."

Says the court, see *Estate of Jacobs,* 23 Am. St. Rep.
231, 232: "What then," did the testatrix intend by the
residuary bequest of "the remainder and residue of my
money?" The word money literally means cash; and,
if we adopt this interpretation, nothing passed by this
clause. It was conceded, however, that this word was
the equivalent of property. It was conceded "by the
appellant that it included only money securities," and,
perhaps, "other personal estate." That the word
"money" is popularly known and used as indicating
property of every description is well known. Thus it

is very common to refer to a person as a "moneyed man" because of his large "possessions." It appears very plain to us that this testatrix used the word "money" in its popular sense, as the equivalent of property, and that "she intended all her estate to pass by the residuary clause." She knew "of what her estate consisted when she made her will."

Money is a generic term, and covers every thing which, by consent, is made to "represent property." *Crutchfield* v. *Robins,* 42 Am. Dec. 417 & note. A general residuary clause includes any property or interests of "the testator not already disposed of." *Riker* v. *Cornwell,* 113 N. Y. 115; *Little* v. *Giles,* 25 Neb. 314; *West* v. *Randle,* 79 Ga. 28. See, also, following cases, as maintaining the doctrine, that the word "money" is notoriously used in a much wider, more indefinite, and elastic sense, and it may have any meaning which the testamentary intent, as manifested by the will read in the light of proper evidence, imparts to it." *Levy's Estate,* 161 Pa. St. 189; *Dillard* v. *Dillard,* 97 Va. 434.

Certainly every clause of the will, taken with the facts as disclosed by Cason, and the demand note, shows the intent of Judge Thrasher to treat and consider the five thousand dollar dividend, on deposit with the Port Gibson Oil Works, as "money" remaining at time of his death.

"A promissory note, bill of exchange, or other paper payable on demand is due "immeditaely." *Hotel Lanier Co.* v. *Johnson,* 103 Ga. 604; *Mobile Savs. Bank* v. *McDonnell,* 4 So. 346.

The case of *Leonard* v. *Olsen,* 61 Am. St. Rep. 231, *et seq.* grew out of a demand note, which on its face, provided for payment of interest annually, etc. The payee endorsed the note to Arah Leonard and others The effort in said case was to hold endorsers. The court ruled as follows: First. "The indorsement of a negotiable instrument payable on demand is presumed to have been made on the day the instrument was exe-

cuted;" second. "A promissory note, payable on demand, will be considered overdue and dishonored unless payment is in some manner demanded within a reasonable time;" third. "Negotiable instruments, payable on demand, whether with or without interest mature as to the endorser, only when payment is demanded, and it must be demanded within a reasonable time." See also note at foot of above named case.

In the case of *Kraft* v. *Thomas,* 18 Am. St. Rep. 346, 347 & note, the court said: "A promissory note payable on demand is due immediately, without demand, and" the statute of limitations commences to run at once from the time of its execution.

The paper mailed to Judge Thrasher refers to the amount of money named therein, as being deferred dividend. That is paper accompanying the note payable on demand, or on day following demand, etc. So the five thousand dollars was money actually due to Judge Thrasher. Holding it by the Oil Works Company, payable on demand, placed it *ex vi termini,* subject to his order. He had this paper when he wrote his will and knew it was at the Oil Works subject to his immediate order and payable immediately. As a lawyer of learning and ability he knew it when he drew his will. His intention, from the will read and construed as a whole, manifests that he dealt with all of his property, known to him, when he wrote the seven clauses thereof. He, by the first, second, third, fourth and fifth clauses sought to dispose of all his property.

POTTER, J., delivered the opinion of the court.

Judge Steven Thrasher, a business man and lawyer, was a resident of Claiborne county during his life and died testate, and involved in this controversy is the proper construction of his will on one point. The fifth clause of Mr. Thrasher's will is as follows:

"If I should have more than three thousand dollars in money on hand at the time of my death, then I give

one thousand dollars to Mrs. Bettie B. Humphreys, wife of B. E. Humphreys, and one thousand dollars to R. E. Lee Hamilton, my stepson. Otherwise I give all money to my beloved wife, Martha J. Thrasher."

After having made specific bequests, he disposes of the residue of his property in the sixth clause of the will, by which he provides that:

"All other property of whatsoever kind or description, I will and bequeath to my beloved wife, Martha J. Thrasher."

When the testator died he had on deposit in the Port Gibson Bank subject to check the sum of one thousand seven hundred and thirty-one dollars and forty-two cents, and on deposit with the Delta Trust & Bank Company, at Vicksburg the additional sum of six hundred and forty-seven dollars and seventy cents, in all two thousand three hundred and seventy-nine dollars and twelve cents, the aggregate being less than three thousand dollars. He had also a promissory note payable on demand, dated July 28, 1913, for five thousand dollars bearing six per cent. per annum interest from date, and signed by the Port Gibson Oil Works. This note was given by the Port Gibson Oil Works, in which Mr. Thrasher was a stockholder, for dividends on his stock. This note was mailed to Mr. Thrasher at Red Lick, Miss., and the letter, transmitting the note to him, written by the Oil Mill Company, is as follows:

"You will note that we have made the paper payable on demand, but, of course, this with the understanding that we are to use the funds until the close of the season as per our agreement today."

The only question for us to determine is whether or not the note above mentioned was to be counted as money on hand in construing the will and to thereby determine whether or not the decedent had on hand more than three thousand dollars in money at the time of his death, and to therefore determine whether or not Mrs. Humphreys and Mr. Hamilton are entitled to the

legacies of one thousand dollars each, as it was a con-
dition precedent to their right to take these legacies that
the decedent should have "more than three thousand
dollars in money on hand" at the time he died.   On a
petition filed in the chancery court of Claiborne county
by the executrix, praying for a construction of this will,
the court decreed that the note for five thousand dollars
was to be counted as money on hand, and decreed that
the executrix should pay the two legatees the sums be-
queathed to them respectively.   From this decree the
executrix appeals.

Unless there is something in the context of the will
that would indicate another and different meaning, the
phrase "money on hand" means what it ordinarily does,
cash money in one's possession or on deposit in a bank
subject to check, or bank notes used as a circulating
medium of exchange.   But the will itself in this case
clearly indicates that Judge Thrasher used the phrase
"money on hand" in its ordinary acceptation, meaning
thereby the actual money that he should have on deposit
at the time of his death, or money in bank subject to
his check.   If he had intended to treat the five thousand
dollar note as cash on hand, it would have been un-
necessary for him to have provided in his will that these
legatees would take one thousand dollars each, provided
he had more than three thousand dollars on hand.   He
would have simply left them a cash legacy of one thous-
and dollars each.   In his will he provided that if he
should have more than three thousand dollars in money
on hand at the time of his death, then Mrs. Humphreys
and Mr. Hamilton should have one thousand dollars each,
and the balance of his money was, of course, disposed of
by the general residue clause in his will.   It was there-
fore the evident intention of the testator to be certain
that his wife would be amply provided with cash money
at the time of his death, and he so constructed his will
that, in all events, she would have one thousand dollars
in money if he had that much on hand at the time of

his death. In other words, it was the testator's inten-
tion to leave his wife at all events one thousand dollars
or more in cash money, probably realizing how difficult
it is at times to obtain ready money even on good
security, and the necessity of actual cash to a widow
who is just beginning to look after business matters on
her own account. We, therefore, hold that in constru-
ing Mr. Thrasher's will the demand note for five thou-
sand dollars should not be counted as money on hand,
and, the decedent having died without having "more
than three thousand dollars in money on hand," that
Mrs. Martha J. Thrasher is entitled to such cash money,
and the legacies to Mrs. Humphreys and Mr. Hamilton
fail.

*Reversed and remanded.*